Our fifth matter for this morning is two cases, Cross v. United States and Davis v. United States, this fight. Thank you and may it please the court. I'm representing two clients here today and there are a host of issues at play, so for the most part I'm going to be looking for guidance on what the court has concerns about. But I'll start with the issues we have in common, the first being procedural default, although the posture is not the same in both cases, in Cross that issue was waived, in Davis there's an additional ground. But the easy way to decide procedural default in both of these cases is that Reed v. Ross clearly excuses any procedural default to the extent it was defaulted, to the extent it was raised. Every court in the country that's looked at the issue has decided that Reed applies to the Johnson issue, which I think it was the D.C. Circuit said was like a bolt of lightning out of the clear blue sky. So that's procedural default. The next issue they both have in common is timing, and again, a little different in posture. Cross has been litigated for longer than Davis has, so before Beckles there were a lot of things being conceded in Cross' case that were sort of unconceded after Beckles came out. But on timing, it's a really simple, straightforward timing statute provided in 2255F. The government has a new idea that that only applies where there's a new right recognized by the Supreme Court and a new right being asserted that are essentially identical. Akin, like I've explained, to 2255 substantive standard in some ways, which turns 2255F3 into something completely new. So I take it your position is that whether the Supreme Court has established a rule that is now retroactively available for matters on collateral review, but a rule wouldn't necessarily mean the same statute. You could have a rule that says there will never be an implied right of action under spending clause legislation, and it would apply to any spending clause legislation, not just the particular one before the court. That's correct, Your Honor, and we have decades of Teague litigation to tell us what a new rule means. The line of Supreme Court cases going from Godfrey to Stringer is probably the best example where you have different death penalty statutes in different cases with different wording. And yet when you get to Stringer, where maybe the Mississippi Supreme Court had ruled that he was relying on a new rule, he wasn't really relying on Godfrey, because Godfrey was about a different statute with different wording, and it was done in a different way, and the Supreme Court said no, this is direct from Godfrey. Godfrey is applied here, and the government is arguing that this is sort of plain language, so same right, it has to be essentially exactly the same right. That only works if we're all assuming that the word right means what they believe it means. So how important, if at all, is it to your position that the Supreme Court has said on some number of occasions, several that I can think of, that the language of the Armed Career Criminal Act and the language of the Career Offender Guideline, as the residual clause, were identical? Does that help you? Is it irrelevant in your view? It's helpful, and you can also look at the fact that in Johnson itself, it actually cited to career offender cases to discuss the hopeless indeterminacy of the residual clause, so we're really talking about the same thing. And unlike in the advisory guidelines context, where the Supreme Court essentially carved out an exception to Johnson, they limited it. It has to be something to fix statutes. In addition to identical language, we're talking about an identical function, and that's that the mandatory guidelines, exactly like the ACCA or sentencing statute, fixed sentences prior to Booker, and so Johnson is really a direct application to this case. So one of the government's arguments is that even with the mandatory guidelines, there was the possibility of a departure, so they didn't fix quite the same way that a statutory maximum and minimum would. That's no different than, I mean, the departures are essentially defined, they are defined by the statutes, and this court through many cases, and the Supreme Court through many cases, said that when departing, you look to the guidelines for when you can depart and how you can depart. So it's no different from a sentencing statute with subdivisions for, you know, if this exists, then this, if this exists, then this. Of course, even under the ACCA, there are grounds for departure, and the ACCA itself is a departure from the ordinary 10-year maximum. But it's all defined by statute, just like the mandatory guidelines defined what could be done. Ms. Feit, if I could, I'd like to ask you about an issue specific to Mr. Cross that really includes both the elements rationale and the merits of the due process claim at bottom. As I understand it, Mr. Cross committed this, I'm sorry, Mr. Davis, I'm talking about Davis. Davis is the one where we have the issue about the elements clause.  Okay. If we look at the 1991 guidelines, we see the definition, and we see the application note that says crime of violence includes robbery. Now, I realize it may be rather fictional to imagine Mr. Davis wondering before he commits this series of robberies what his exposure will be, but if he looked, he would see robbery counts. He knows he's got a robbery conviction. How is this not fair notice? Well, this in part goes to the issue that was the subject of the 28-day letters of what does Rollins mean at this point, where Beckles doesn't address the same issues as Rollins, but it's probably overruled. But essentially, if the commentary is attaching to guidelines text that is void, then the commentary itself has no independent legal force. I remember getting reversed as a district judge for disregarding an application note. So they have a fair amount of weight. Sure, and certainly under the mandatory guidelines, I mean, everything had weight. Rollins was relied, and this is an issue that perhaps should require additional briefing if you'd like it, Your Honor, but Rollins was focused on a couple of Supreme Court cases, including Stinson, which really defined what the commentary does. And what the commentary does is interpret text. And so, again, we have to look to the text. Does the text need interpretation? Is this something where ambiguity can be clarified? And this is kind of a different situation, but if you look at Johnson, which overruled Sykes, which also overruled James, I mean, you could say that people were on fair notice that fleeing an attempted burglary were considered violent felonies under those cases. And yet those defendants got the relief they were entitled to, the ACC defendants at least, because the basis for finding that the residual clause covered those crimes was an unconstitutionally vague guideline. And so, you know, to the extent the commentary is interpreting something that's so vague nobody knows what it means, that commentary is, to some extent, worthless. Do we need... I remember using similar languages in the case I mentioned as a district judge and getting reversed for it. Oh, you never know what the Court of Appeals is going to do. In order to get as far as you need us to go, do we also have to implicitly think that the Curtis Johnson case should inform the way we look at the notion of an old crime of violence under the pre-Booker guidelines? In other words, does that need to be retroactive, too? I know we have these Wisconsin cases defining the simple robbery in such a mild way that it certainly would not fit Curtis Johnson, but Curtis Johnson was well in the future at the time Mr. Davis was acting. Yes, and there's a footnote with a long line of string sites with all of the federal courts, including every circuit court that's considered the issue, that Curtis Johnson, that Taylor, that Shepard, that all these other sorts of cases do come into play regardless of whether they were themselves. Retroactive, regardless of timing, where what you're looking at is essentially prejudice or harmless error. Now, if we had a freestanding Curtis Johnson claim that was unrelated to Samuel Johnson, then we would have a big problem here. But, like I explained in my brief, until Samuel Johnson came out, Mr. Davis had no claim. Okay, okay, that will be fine. I'll stop there. All right, so do you want to say anything about Mr. Cross's appeal waiver? I mean, Mr. Cross's appeal waiver, I first want to start by saying that this court has never addressed an appeal waiver that looks like this. So we agree there's this body of law where you have a blanket appeal waiver. There are certain exceptions that are read into it for things that are truly fundamental that people should not be able to give up. That's not what we're talking about here. We're talking about an agreement that included an exception that the prosecutor's office chose to put in that Mr. Cross, you can tell from, frankly, the fact that he filed a direct appeal, from the fact that when he was still pro se in this 2255 case, he considered it a done deal. This exception applies, so I'm going to move on with my argument. It's only when I came in, I started to recognize what it is we're arguing about. But he may still not know what we're talking about because there was an exception that applies to this very situation. So you're not arguing, are you, that any constitutional error in sentencing is covered? Absolutely not. So help us understand how you think this line should be drawn with this language. Constitutionally impermissible factors. So a factor that the court relies on, which is found to be constitutionally impermissible. Something substantive as opposed to a procedural error in the sentencing? It's hard to imagine a procedural error involving a factor that is itself constitutionally impermissible. And, frankly, given Beckles, we don't have to worry about something like this coming up in the future because the advisory guidelines, of course, are not subject to the due process vagueness analysis. Aren't the cases that the government is relying on, they don't have language like you had, correct? I mean, if it had just said we waive everything, then these would be applicable or they might be as interpreted in terms of limitations of equal protection or something. Isn't their problem here that they put language in there? Yes, Your Honor. That anybody would reasonably understand what it said? Yes, Your Honor. And so the cases that they're relying on are essentially blanket waivers that limit it so much, it's really, I mean, it's mostly race. Theoretically, it could be something like gender, but the language here is not nearly that narrow. It has nothing narrowing it. And like we explained, there's certainly nothing in the record that narrowed it beyond its broader terms. I will save some time for a bottle. All right. That would be fine. Thank you. All right. Ms. Tableson? Yes. Okay. Ms. Tableson. May it please the Court, Rebecca Tableson on behalf of the United States. There is, as Ms. Feitjo said, a straightforward statutory provision that applies to both of these cases and that is dispositive for each. 28 U.S.C. Section 2255F3 creates a one-year statute of limitations that runs as is relevant here. But, of course, Ms. Tableson, you probably know since you have clearly been practicing law since Johnson 2015 was decided, that we saw a lot of Johnson 2015 cases where people came in and said the Supreme Court, and then, of course, Welsh comes along, the Supreme Court has recognized a substantive right basically not to be, so maybe a negative right, not to be an armed career criminal. And it's the first time in my memory that we granted substantial numbers of petitions seeking permission for second or successive habeas corpus application, meaning 2255, a 2255 motion, I should say. And that standard is even stricter than statutes of limitations. It seems to me that we don't just have a straightforward, oh, it's one year, you missed it, because, in fact, a great number of people, because of the right recognized in Johnson 2015, have been given the chance to go back. In fact, maybe the government has defenses in some cases. The government clearly has. Sometimes there's been a controlled substantive offense. Sometimes there have been other things. But in this instance, I can't see a principled way to distinguish these two people from the second or successive group. I think I see a few parts to Your Honor's question, and let me address them in turn. First, with respect to instances in which this court has granted permission for people sentenced under the mandatory guidelines to file second or successive petitions raising Johnson issues, those decisions are, as many of this court's precedents pointed out, sort of preliminary decisions based on a prima facie showing. And that's all this is, too. This is just saying you get to have your case. You're not too late because the relevant date is the date when Johnson 25th, Samuel Johnson, if you will, was decided. And they both filed comfortably within a year of the decision in the Samuel Johnson case. So why isn't that the simple answer to the timing question, and we move on to other issues? Well, on that point, Your Honor, I think especially now that Beckles has come down, things have changed about the way. . . Beckles has not changed the mandatory guidelines. I have reread Beckles about five times before this argument trying to extract from it anything about mandatory guidelines. And all I get is Justice Thomas over and over again. I highlighted all the places where Justice Thomas referred to advisory guidelines. And the entire rationale of Beckles is that if it's advice, it's not the kind of thing. . . It finally ends up because the advisory sentencing guidelines are not subject to a due process vagueness challenge or B1.2A's residual clause is not. . . So Beckles isn't going to help you. I agree, Your Honor, that Beckles is very careful not to decide this question. As Justice Sotomayor observed, the question is open. And that is what's key here. 2255F3 requires that the Supreme Court have, quote, recognized the right assertion. Counsel, is your position that the claims are not ripe yet then? Essentially, Your Honor, yes. So if the Supreme Court were to decide next year a case applying Johnson to the mandatory guidelines, which it would logically do, the government would not argue that all the new round of claims are time-barred because they should have been obvious in the wake of Johnson and Welch? Just like the government argued in the Chaidez case, I might add. The Chaidez case is very interesting on this point because Chaidez found that Padilla actually did announce a new rule because Padilla did not just apply the tried-and-true Strickland standard as a matter of course, but it addressed the threshold question of whether Strickland even had any application in that setting. I guarantee you that the government would argue that this was just an application of a standard to this particular language when there's a mandatory sentencing regime, the residual clause is void for vagueness, and every one of those cases is late. Well, Your Honor, I am but a peon in this government, but I can tell you that the government has been arguing that a rule finding that the mandatory guidelines are subject to vagueness analysis would be new under T after Johnson. There are briefs filed in this court making that argument and in the other courts of appeal. Did they make that argument in Beckles? The argument in Beckles, yes, concerned the retroactivity of such a rule. But I mean that it wasn't right yet? Well, no, Your Honor. In Beckles, the government at the time was conceding that the vagueness review applied to the advisory guidelines, which were at issue in Beckles. And so it is true that the government's litigating position has taken twists and turns here. This question may be somewhat rude, but I need to ask it, because your argument on the merits here astonished me, arguing that, for example, the departure features of pre-Booker guidelines were sufficient to address the vagueness problems. Because ever since Booker, the U.S. Department of Justice has been arguing to make the guidelines as forceful and continually binding as possible. And so my question is, did the S.G.'s office approve this brief? Your Honor, this brief takes the positions that are mandated by the Department of Justice. So just to be crystal clear, yes, I am not a rogue AUSA. Every position taken in this brief has been handed down from above. Because as I was reading it, I said if we agree with this, the S.G.'s office is going to confess error if there's a cert petition. Well, on the merits, I can't comment on that. I understand. But I can promise you that this is true. If you're following orders, I understand. I am, and I realize that the government's changing positions are frustrating. All I can say at this point is that we do have consistent marching orders, and so at the very least, the positions that are being taken right now across the Courts of Appeal are consistent on the issues before you right now. And the two Courts of Appeal that have reached this issue of timeliness have agreed with the government under the plain text of 2255F3, and those are the Fourth and the Sixth Circuits. The Eleventh Circuit has mentioned it, but in an unpublished opinion. Right. So there is a signal that there is a conflict in the circuits on this point, and all we would need to do is line up on one side or the other of that conflict. Do you mean with respect to the First and Third Circuits, Your Honor? No, First and Third, and then there's Fourth and Sixth. The First and Third Circuits have not actually addressed this question other than in a second or successive posture, and so as I think both parties agree, those decisions are not sort of fully precedential, but you're absolutely right that some of the reasoning in the First and Third Circuits is contrary to the reasoning in the Fourth and Sixth. But the Fourth Circuit observed that it had previously granted second or successive petitions allowing these mandatory guidelines claims to go forward and that those second or successive authorizations did not foreclose its ultimate ruling of untimeliness. The problem that I have with the whole position, Counsel, is that it seems that timeliness depends on the merits of the claim. That's an unusual reading of a time-limited statute. Well, Your Honor, let me put it this way. It cannot be true that any prisoner can file any claim within a year of Johnson and slap a Johnson label on the heading and claim to have asserted a Johnson claim. It has to relate to the theory that Johnson was talking about. That theory is here's a residual clause, identical wording in the career offender guideline. That wording is unconstitutionally vague when it is against the backdrop of a mandatory regime such as the Armed Career Criminal Act is. Another mandatory regime is the pre-Booker guidelines. I don't think we're talking about somebody saying, you know, that the Gun-Free School Act is now suddenly back in play or something completely beside the point. There is a legal theory of void for vagueness in residual clauses. Of course, Your Honor. What I mean to say is that it is not unusual, in response to Judge Hamilton's question, it is not unusual to have to take a peek at the substance of a petitioner's claims, whether it's a civil plaintiff or a habeas petitioner, to determine threshold procedural questions like jurisdiction or limitations. So you would throw out a frivolous claim, of course. But the language of F is the date on which the right asserted. That's the right asserted, not the right proven. The right asserted. And the right these two people are asserting is the right that Johnson talked about. Now, somebody on the merits may say, well, there are distinctions between the Armed Career Criminal Act and the pre-Booker mandatory guidelines. The merits will be the merits. But it's very hard to say that Mr. Cross and Mr. David aren't asserting this right, and it was recognized by the Supreme Court. Well, Your Honor, I would draw your attention also to the words immediately following. It was initially recognized by the Supreme Court. And it simply defies belief that an issue the Supreme Court has deliberately left open can be said to have been recognized. No, the right asserted is the right about the residual clause. You would say that it's actually just completely duplicative, that the Supreme Court in Johnson asserted the right in Johnson, and so Johnson is the law for Johnson. And that's absurd.  The Supreme Court just has to issue another decision the next day. Yes, we still agree with Johnson. So now we have that. I suppose to the extent Your Honor is asking how broad is the right in Johnson. No, I'm not. I'm saying your position is that only an exact replica of Johnson would be able to take advantage of 2255F3. And you don't need 2255F3 for an exact replica of Johnson. That's the second or successive petitions, the ACCA cases. And the government does not mean to suggest that every petition needs to be an exact replica. Yes, you do. That's the exact essence of your argument. You can't get away from that. Your Honor, I would be happy to address this more, but I see that I have three minutes left. And if I could also move on to the many other issues that are in this case. Okay, go ahead. That's fine. But I do not mean to. We would not take this as any kind of waiver, fear not. Or, no, I don't mean to give any short shrift to your line of questioning. Okay. Beyond timeliness, there are, of course, numerous other bars to relief here. Cross, on his part, validly waived post-conviction challenges. Except for the exception that he had, which we were discussing with Ms. White. Exactly true. And the U.S. Attorney's Office in the Eastern District of Wisconsin has been putting those exceptions into plea agreements for decades. Those same exceptions are still there. Are you saying a defendant should come in there and understand it? Frankly, I read it, and I took it literally. I think the district court interpreted the exceptions objectively, which it was supposed to do under this court's case law, and consistent with the decades of this court's opinions. And that conclusion is consistent and is certainly not clearly erroneous. Why would it be unreasonable, given that we're talking here about waivers of constitutional rights? And Mr. Cross has a pretty good argument that his sentence was doubly unconstitutional, both being sentenced under unconstitutional mandatory guidelines that were also unconstitutionally vague. Why should we not just treat that language as simply too ambiguous to impose that severe consequence on Mr. Cross? The language of the residual clause, Your Honor? No, no, the language of any constitutionally impermissible factor. Well, frankly, because this court has been employing those terms for decades. No, we haven't. All we've said is that if there's an appeal waiver and the U.S. Attorney's Office comes along and says, we've decided to do something on the basis of race, there's a fundamental constitutional problem with that that really doesn't even need to be mentioned in the appeal waiver, it's so obvious, which is why when the appeal waiver does go out of its way to go beyond simply the grotesquely unconstitutional and say, if there's any constitutional problem, you get to raise it. That's what they said. I think one point to clean from Your Honor's comment. Maybe the U.S. Attorney's Office in the Eastern District of Wisconsin will drop this language now. I don't know. One point to clean from Your Honor's comment is that I do not think there is a limiting principle inherent in Cross's proposed interpretation of this language, so a constitutionally impermissible factor does not just, under Cross's reading, extend to the residual clause of the mandatory guidelines. I don't see why it wouldn't also extend to, say, a guidelines ex post facto violation or a reliance on... Well, perhaps it should. Yeah, that's right. I mean, ordinarily, there's lots of law that says plea agreements, their contracts are going to be construed against the drafter. Ordinarily, contracts are. It's just plain language. There's also lots of law in the circuit saying that plea agreements should be construed objectively in light of the governing law at the time, because they are not simply a contract. They are a phase in the criminal process. And that is what the district court did here, and its interpretation was not clearly erroneous. So we do think that forecloses Cross's claims. With respect to procedural default, the government's basic argument is that both petitioners have attempted to squeeze through very small loopholes in the procedural default doctrine, but they cannot. They have not alleged actual innocence, and they have not demonstrated that their claims are so novel that they should be excused from the normal rules of advocacy. So what's the point of allowing people to pursue claims under retroactive Supreme Court opinions? We have clear statutory permission to do that. Should we apply judge-made doctrine to foreclose those, essentially all of those claims? Well, I think this court's precedents, like Perota and Boyer, have acknowledged the tension, which I assume is what Your Honor is referring to, between Teague and the Reed standard, right? Because Teague actually does very much narrow the range of opinions on which a petitioner can rely and calls into question the continuing validity of the Reed standard. And that is why the Reed standard for cause about raising novel claims is so rarely applied. I think my friend said that every court in the country has decided in petitioner's favor on this. That is not true. The exceptions include a court in the Western District of Wisconsin, so in our state, that ruled the other way. And this court has certainly no long history of relying on the Reed standard to excuse procedural defaults. Finally, with respect to Davis, as Judge Hamilton noted, and I realize I'm over time. You may finish this up. Thank you, Your Honor. Davis also has a problem with respect to the predicate offense that he claims is no longer a crime of violence. Could I ask you, in your brief, you said Walton is not convincing. It's a question of state law. How can the Supreme Court decision not be convincing? I think, Your Honor, that perhaps what we could have said better is that these cases should not be overread. They're pretty clear. And if that's what Wisconsin wants its law to be, even if it's in a minority of states. They basically say they use the language that is later used in Curtis Johnson about the difference between force and violence, right, and say there's no difference. I acknowledge this is a difficult issue for the government, but the truth is that the facts of those cases. I mean, look, the government is usually not you. The states are always, they march in here day in and day out and say, you have to accept every word out of the state court's mouths. So we do. You know, that's what we're supposed to do. But you've got to take the bad with the good, I guess I have to say. Well, Your Honor, it's purely independent of Walton or Whitaker is the fact that robbery was listed in Application Note 2 to Guidelines Section 4B1.2. And as this court very recently noted, those application notes can, quote, disambiguate the sentencing guidelines. And as a result, Mr. Davis. But that's there you have the ambiguity again because if the residual clause is ambiguous, which robberies, states have all levels of robbery, and just putting it in the application note begins the inquiry. It doesn't end it. Is it generic robbery? It does, although. Is it like burglary? We have decades of Supreme Court cases on what counts as burglary. It could, Your Honors, although in Otero, this court specifically noted that this exact Wisconsin simple robbery statute is enumerated in Guidelines 4B1.2 Application Note 2. But all that was before? That was then. Before the Samuel Johnson and Curtis Johnson. A simpler time, perhaps, but the enumeration of robbery in that guideline note still provides notice to someone who has been convicted of robbery that they may be deemed a career offender on that basis. Your Honors, I'm quite sorry I've gone over my time, but I would really be happy to answer any additional questions should the panel have any. These are important issues, I know. All right. Apparently there are none. Thank you very much for your presentation. Anything further, Ms. Feit? Then we'll give you a little bit of extra just to balance things out. Thank you, Your Honor. I actually only have a couple of points. I think I get that the court understands a lot of what I'm saying, so I don't have much to clarify. On the 2255F3 timing issue, I think they just keep coming back to treating the word right like the word holding. These are different words, and the right I think you can easily say that Johnson recognized a right not to have your sentence fixed by the residual clause, which applies directly here. The government says that it's not planning on arguing that there is that the rule in the future would not be a new retroactive rule, and I might be saying that backwards, but the point is in the end the courts have to decide whether that rule will be new, and given the clear straight line from Johnson to these cases, I do not see how it could be a new rule to apply Johnson here. On the Reed versus Ross issue, first I just want to say, I think she's right. It was actually one of my cases. It wasn't published, but I had forgotten that there was one judge in the Western District who made a comment in the midst of a number of other issues, and because it's not published, I missed that in doing my Westlaw research, but other than that maybe if my memory serves me correct, the judges throughout the country and the circuit courts are certainly in agreement that Reed applies to these cases, and then if you look at Cross's case, it's particularly obvious what he got was an Anders brief, and the court accepted his Anders brief. This just wasn't an issue. It was not on the horizon. This is precisely what Reed was designed for where lawyers aren't making strategic decisions to wait in the weeds with a claim. The claim just wasn't there. And then my last comment is just on Hill. I think I mentioned in the response to the 20HA letter that the reference to disambiguating that was in dicta, Hill is actually an ACC case, so this is a much bigger issue if we want to get into commentary, and I guess I'll just say for the third time that if the court intends to go there, I would ask for a full opportunity to brief that. Thank you. All right. Well, thank you very much. Thanks to both counsel. You will take these cases under advisement.